The next case on for argument is United States versus Tannenbaum et al May it please the court, Thomas Clark on behalf of the United States. This is the IRS lien enforcement case where the delinquent taxpayer Gershon Tannenbaum died 15 months after the case had been submitted to the district court for decision, but six months before the district court entered its decision. So Mr. Clark, before we get into that, and we'll probably allow both sides a little bit more time here to discuss this, I'm not sure I understand the government's concession. The government seems to be making concessions these days. The government's concession that what passed over to the spouse didn't somehow have a lien attached to it. Explain that to me. Well, as a matter of federal tax law, the federal tax lien attaches to property and if the taxpayer transfers his rights to a third party, the lien follows that transfer. Right. So by denying the property that his right was transferred, what right did he have? Well, see, that's what we wish to — Is that a New York law proposition or is that a federal proposition? And if it's a federal proposition, where the heck does it come from? No, it's — you know, the federal tax — the federal tax lien attaches to rights and property rights belonging to the taxpayer. You look to state law to determine what rights the taxpayer has. Federal law determines whether or not those rights are property within the meaning of the federal statute. So this was a tenancy in common, right? No, no, this was a tenancy by the entirety, and that's the key point. And under New York law — A spouse has an undivided — undivided ownership. Ownership of the entire property. So once one spouse dies — The other, by operation of — has always — As a matter of New York law, the deceased taxpayer no longer has any — his property right is not transferred, it's just extinguished. It doesn't exist anymore. And that's why we have not mounted the argument in this case that, you know, the property interest was transferred. I think it was just extinguished. But then that flies in the face of Kraft. Well — If he were alive today, what would you be doing? If he were alive today, then we would — even though he's dead today, we're asking — No, no, no, but if the facts here were different and you were up here, you wouldn't be conceding that you don't have a lien on that property, that you can then go force a division of the property and get your money. No, of course. Under Kraft, the lien attaches to the taxpayer's interest and the entirety's property. And the lien attached to Mr. Tannenbaum's interest in this property as well. Right. So then the interest that it seems to me — or tell me why I'm wrong — the interest that Mr. Kraft — sorry, that Mr. Tannenbaum had at the microsecond that he passed away, that passed over to the spouse, carried with it the lien that attached. Why did it go away? Well, see, that's how we interpret New York law, is that his interest did not pass over. His interest was just extinguished. It no longer existed. But you could have had a forced sale before he died, but you couldn't do it after he died. Is that the bottom line? Well, correct, depending upon how this shakes out in this case, because — Under New York law, Mike, just to follow up on Judge Hall's question, if they were both still alive and the lien only attached to Mr. Tannenbaum, your argument would have been you could do a forced sale of that property, give her her interest, but you could do a forced sale. But once he dies, since his interest disappeared and now is all in her, you can't do a forced sale now. Correct. If Mr. Tannenbaum had died before we brought suit, well, we would not have brought suit because our understanding of New York law is that he no longer had any property interest and then there was nothing that the lien attached to. Because again, as we understand New York law, is that once the one spouse dies, that interest is extinguished. It's not transferred, it's just extinguished. Because before the death, both spouses own a 100 percent share of the property. But after death, the one interest is just extinguished, and so there's nothing else for the lien to attach to because Mrs. Tannenbaum owns the entire interest in the property. Could I ask you a question on a different part of your brief here? That is the Mitchell case, Supreme Court case, which everybody talks about and cites and relies on. Is it your view that Mitchell does not give the district court any kind of discretion whether to affect a non-pro-tunk result or is it discretionary? I couldn't figure that out from your brief. Okay. Our reading of Mitchell v. Overman is that the court had a duty to do that and I rely upon . . . Well, that's why I can't understand it. The simple question is, did the district court have discretion here as to whether to apply non-pro-tunk principles? No, we . . . You say no. Our argument . . . No. Well, our argument . . . This is why I'm asking. Our argument is that the court had a duty to do so, but if you disagree with us and  under the . . . I know you argue the second part, too, but I just am curious . . . Well, we're . . . . . . with the Second Circuit cases after Mitchell, it seems as they recognize some discretion in the district court. Yes, but of course, there's no Second Circuit case as far as we've been able to determine ever dealt with this non-pro-tunk issue when there was a death of a party. In Mitchell v. Overman, we rely on this key language that Stutzman, the plaintiff, was alive when the case was argued and submitted. He was entitled at that time or at the term of submission to claim a final disposition. The delay was altogether the aptitude of the court, its duty . . . As justice may require, too, right? Well, in stating the general rule about non-pro-tunk relief, yes, it says as justice may require, but when it talks about the specific facts of this case, the court does say that the And the decree would have been erroneous because Stutzman, the plaintiff, was entitled to a judgment in his favor at the time that the case was submitted. That's on page 65 of the court's opinion in that case. Now in this case, the district court did not issue an opinion explaining why it was denying our request for non-pro-tunk relief. It just issued the order saying it was denied. So all we can glean from the district court's reasoning is the judge's statements at the hearing. And so I know that's kind of iffy because . . . Should we reverse or send it back and ask for further explanation? Well . . . And if we're sending it back, what do we ask the district court to do? We think that the case should be reversed because, again, relying on this language from Mitchell v. Stutzman, we think that the court had a duty to enter its decision non-pro-tunk. Back to the point prior to the death. Okay. If you disagree with us about the duty . . . I'm not. I'm not. Keep going. Tell me why. If it's discretionary, then I think that . . . I think the case law says that the courts are supposed to explain its decision when it issues a discretionary decision. And all we know here is what the judge said at the hearing. And it's iffy because you don't know what she was saying, if she was just probing or if she was actually stating her decision. She seemed to be relying upon Second Circuit law, in particular the World Trade Center litigation decision from 2014, which does . . . it does say that the matter is discretionary. But again . . . In exercising discretion, does the judge, does the court consider equitable factors? Well, yes, of course. That would be part of the decision. So like the fact that Mrs. Tannenbaum obviously benefited to the tune of one point X million or whatever we've got going here, that her husband did not pay into taxes? For all the years, yes. For some twenty, thirty years, yes. Yes, those are equitable considerations. And that's something that the district court can consider? Yes, it can consider that. Was it argued to the district court? We argued a discretionary matters to the district court. That specific point, I'd have to look at our brief below, but I believe all those matters were presented to the district court. There's also the fact that if this property is sold now, Mrs. Tannenbaum will get half the proceeds. As of 2014, the property was estimated to be $1.2 million. I don't think property values have declined since 2014. In addition to that, the district court recognized that actually Mr. Tannenbaum's father bequeathed a condominium to Mrs. Tannenbaum and Mr. Tannenbaum's sister rather than to Mr. Tannenbaum. Mrs. Tannenbaum received $350,000 from the sale of that condominium. And the district court did realize that with perhaps $600,000 from the sale of the property plus the $350,000 from the condominium . . . Whose duty was it to inform the court of the death of Mr. Tannenbaum? Well, I think that would be the Tannenbaum's, Your Honor. We didn't know and the district court didn't know until it was informed by the Tannenbaum's counsel and I understand the Tannenbaum's counsel did not know until after the district court issued its decision. But I think that would be up to the Tannenbaum's, yes. I'd just ask you about these factors too. I thought the district court did also mention the time that the summary judgment was under consideration. It wasn't that long a period of time compared to all the other cases in the district and also talked about how the criminal case against Mrs. Tannenbaum was dismissed by the government. So aren't those factors that play into the discretion of the district court in arriving at this application? Well, again, under Mitchell v. Overman, I would say no to that because the court said that the delay in entering decision is because of the convenience of the court or because of the multiplicity of other cases. That doesn't matter because the court relied upon- How long was the time in Mitchell though? Wasn't it like four years? I believe it was in Mitchell, yes. But after Mitchell, if you look at the other Supreme Court decisions itself, the Supreme Court has routinely issued its own judgments, non-pro-tunk, when a party dies between submission, which is the date of argument, and the decision. And so in one of the cases we cited, Harris v. Commissioner, the case was submitted and the party died, and 42 days later the Supreme Court issued its decision but said it was going to be issued non-pro-tunk because it hadn't learned that the party died in between. In the other cases, Quan Pui and McDonald, there was a 72 and 81 day interval between submission and decision, and in both cases, without any further discussion that any other factors are relevant, the Supreme Court said our judgment is entered non-pro-tunk. Correct me if I'm wrong, but the tenancy in the entirety construct is in New York real property law, statutory law? It's not common law, it's statutory law. Am I correct about that? You had me on that one, I'm not sure. I know the tenancy by its entirety is derived from common law, I believe that it's statutory in New York. I'm trying to ask you whether it's codified in New York. Yeah, I believe that it is, yes. But I'd have to double check that myself, Your Honor. Okay, thank you. Thank you, Mr. Clark. You've reserved two minutes for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Paula Frome, and I appear for Sarah Tannenbaum, the appellee. To address your question, your threshold question, at page 16 of my brief, there's a citation to an IRS opinion on this. Does the federal tax lien on entirety's property survive the death of the taxpayer? The answer is, as is the case with joint tenancy, tenancy with the right to survivorship, if a taxpayer's interest in the entire property is extinguished by operation of law at the death of the taxpayer, then there is no longer an interest of the taxpayer to which the federal tax lien applies. In New York, the entirety's, which is, I believe, codified in the real property law. Right. In the real property law, but I'm not sure of the section. I can certainly send your honor, pardon? We can find it. Okay. Each owner is possessed in an undivided 100% interest in the property, and upon the death of either of the spouses, the 100% interest in the property is simply extinguished. So if Mrs. Tannenbaum had been the one to die, her estate would not have been entitled to half of the sales proceeds. Rather, her interest would have been extinguished and the government would have gotten 100% of the proceeds of the sale if she had died during the pendency of this action. As Mr. Tannenbaum died during the pendency of the action, his right to the property was extinguished. Well, so perhaps the IRS has been hoist by its own petard in the fact that it's interpreted it this way, rather than saying the piece of property that Mr. Tannenbaum had when he died was a piece of property to which there was attached a lien, and so the property that moved over was a lien encumbered piece. I don't believe that that is consistent with the law. It certainly is not consistent with New York law, and I've cited- If somebody dies as a tenancy by the entirety- Poof. Poof, it goes away? Poof, absolutely. And if you, there are a couple of cases they are- But we really do need to wrestle with the non-proton piece of this. Yeah, we absolutely, Your Honor, you do need to- So what factors can be considered by, or must be considered, should be considered by the court in analyzing whether something should be non-proton? Does Mrs. Tannenbaum's benefit to the tune of one plus million dollars for unpaid taxes factor into that? I don't believe that it does factor into that- As de facto, she was a tax fraud, which then went away through a deferred prosecution, right? I don't think that Your Honor should assume that she was de facto a tax fraud. She signed the returns. But it could have been innocent spouse as easily, and therefore the liability would not have- She took a deferred prosecution rather than fighting it in court. Of course she took a deferred prosecution rather than fighting it in court. A 100% chance of not being prosecuted is better than a 90% chance if you are prosecuted. Which doesn't preclude it being considered by a civil court, at least as I understand the law. And I think that there are factors on Mrs. Tannenbaum's side as well that the court should have considered, and I believe did consider, but I also think that we should not- What were those factors? Her mother, who resided in the house with her, needed to stay in the Borough Park area, is a very elderly Holocaust survivor, really cannot be transferred. Also- Totally sympathetic, and I think the government has made a concession in that regard. So that's off the table, right? Also made an investment herself into the house to increase the value. That could be accommodated in the sale, right? Except that it would be 50-50, is what the court ordered. And Mrs. Tannenbaum, the house is also used by the community, the Jewish community, to visit hospitals and nursing homes in the area. She has accommodated Orthodox Jews from all over the world in that house, and I believe that that's a factor that also should be taken into account. Was that taken into account by the district court? It was not. But we are not in the same- We're not anymore, I don't think, in the same situation, because now we're looking at whether the court should indulge in illegal fiction. But I also think, Your Honor, that we- What about the delay and notification of the court of the passing of Mr. Tannenbaum? I- It was- It's pretty outrageous that somebody's involved in litigation and the court doesn't find out about it until months later. It was a shock to me as well, but aside from the fact that the court made a decision that it would not necessarily have to make, it didn't change the circumstances. We would be, I think, asking the same questions at this point as to whether it could be retroactive, although I don't believe it should. And I also believe that the court should not overlook the fact that this is an Article III court and the question of mootness arises when Mr. Tannenbaum died, his interest was extinguished, and there was nothing for the lien to attach to. At that point, the case became moot. In the cases in which the government has cited, in which non-protont relief was granted, there was an individual to whom the same interest attached, say, an executor, so that if Mr. Tannen... If the people in, say, Mitchell v. Overman had died the day before, before the case was submitted, there was somebody who existed, the estate existed, the interest could have been transferred and the district court could have made a determination. So the district court went back and said, so the interest still exists, we'll make it non-protont. If Mr. Tannenbaum had died the day before this was submitted, there's no more interest. The interest absolutely goes away, there's nothing to attach to. So I believe that what the government is asking and what the district court is doing is reviving a moot case, conferring retroactively Article III jurisdiction that no longer exists. And Mitchell v. Overman itself was not a... did not originate in the federal courts, it originated in the state court. And the court looked at what the Iowa courts were able to do, not what a federal court is able to do. And if we talk about... We talk about Mitchell v. Overman. I think that if you read all of the court's opinion and not just parts of it, it is clear that there is no duty to render retrospectively the decision, even if there is power. The court said it may be entered retrospectively. A non-protont order should be granted or refused, as justice may require, in view of the circumstances of the particular case. But how, from the oral... the transcript of the oral argument and the decision, do we know what the district court weighed? I mean, the factors. Usually it says, okay, you got to exercise equitable discretion, and there's some guidance, and the district court goes down the five factors and said, on this hand, you know, on the other hand. Was there that kind of analysis in the district court? My recollection was that she said that this... within the context of an ongoing litigation was...with the consequence of the interest being extinguished, was more or less a typical hazard of the litigation, and that there was nothing in this case that was extraordinary that would stand out, that would make the court question what the result of this was. If Mrs. Tannenbaum had died, then the government would have gotten 100% of the... of the house, and there was nothing that Mrs. Tannenbaum did, certainly. She didn't kill her husband. So this was... I think probably if you asked her, she'd prefer her husband be here and give away half the house, but that's not what has been presented to her. So I think that the district court just said, I think that this is a plain run-of-the-mill... Basically, that's what she said. It's a plain run-of-the-mill hazard of litigation. There's nothing extraordinary about this, and there's nothing that should cause me to exercise my discretion to set it aside, and I don't think that there is anything that would make that an abuse of discretion. Has this...and I don't want to know any answer about what was discussed there, but I just am interested in knowing, has this case been to mediation through our CAMP program? It has not. I'm sorry, it has. It has? It has, and we were unable to resolve it. All right, okay. Resolved it. Wanted to make sure. Thank you. Okay, thank you. Thank you, Ms. Fromm. Mr. Clark. Okay, we do have this statement from the district court towards the conclusion of the hearing, and this appears at page 229 of the appendix. The problem I face is under the circumstances where the order was issued at a time when he had no interest in the property. I can't let that order stand. So she just assumed that because at that time he had no interest, her hands were tied. So she went...although I believe the correct... I believe that's the correct decision here, even though I believe the equities do tip in your favor somewhat, the government's favor. So she didn't really balance the equities. She thought that her hands were tied simply because Mr. Tannenbaum had died beforehand, but I don't...I think that's incorrect. What precisely are you asking us to do here? What do you want us to do? We think that you should reverse the district court's decision and order the district court to enter into judgment non pro tonque based upon the statement in Mitchell v. Overman that Stutzman, the plaintiff, was entitled to a decision in his favor at the time that the, uh... at the time the case was submitted to the court. And, uh... At the time the motion for summary judgment was... Correct, correct, Your Honor, yes. Because the... Mitchell v. Overman went on because the delay was altogether the act of the court. It's... I'm sorry, Your Honor? What does that give the government? Well, then... the district court's order that the property be sold and the proceeds divided 50-50 will be in effect. And again, we did represent to the district court below that we would not sell... And the brief as well, that we would not sell the property for as long as Mrs. Tannenbaum's mother is living there. Occupying the house. Correct, yes. Would you respond, please, uh... to, uh... Mrs. Fromm's contention that the... that at the death the case became moot for article... Well, I mean, I think that's correct and I'll... the two-fold response to that. That argument was raised in Mitchell v. Overman. The court said the question here is whether the state court was wholly without jurisdiction to enter the decree after the death and the court said, no, it had jurisdiction because it could enter the decree pro-tunc. I don't... I mean, I don't pretend to know anything much about... This is Iowa law, right? Well, it was an Iowa state court case but the court relied upon Anglo-American common law that the delay of the court shall cause no harm and all of the federal cases that we cert in our brief after Mitchell v. Overman have applied the standard that was... No pro-tunc judgment in a case that has become... after a case has become moot. Well... A case of controversy purpose. Okay, it depends... Then you get into what is mootness, really? Uh... I know what mootness is. Okay, the mootness... I think mootness means that the court is unable to grant any relief to the parties. Right. Here, there's a case of controversy because we contend that under Mitchell v. Overman and the line of cases, you do have the power to order the district court to enter its decision non pro-tunc. If we're correct, that's a... We can revive a moot case, is what you're saying. No, no. We would say it's not a moot case because it's a live case of controversy as to whether or not you have the power to order the district court to enter its judgment non pro-tunc. That's the issue. That's the case of controversy before the court. And we cited cases in our reply brief saying that if we're right, then the case is not moot. But just because we might be wrong doesn't mean the case is moot. All right. Thank you both. We'll reserve the decision.